Minute Order Form (06/97)

JS-6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5226 | **DATE** | 5/17/2002 |
| **CASE TITLE** | Sphere Drake Insurance Limited vs. All American Life Insurance Co. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Sphere Drake's motion for summary judgment confirming the arbitration award (36-1) is denied. The award in favor of Sphere Drake is vacated without prejudice to further arbitration proceedings.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 3 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 20 2002 | |
| | Notified counsel by telephone. | | date docketed | 54 |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | 5/17/2002 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| ETV | courtroom deputy's initials | Date/time received in central Clerk's Office | ETV mailing deputy initials | |

| | | |
|---|---|---|
| SPHERE DRAKE INSURANCE LIMITED | ) | **DOCKETED** |
| Plaintiff, | ) | MAY 2 0 2002 |
| v. | ) | No. 01 C 5226 |
| ALL AMERICAN LIFE INSURANCE CO. | ) | Judge Rebecca R. Pallmeyer |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Sphere Drake Insurance Limited ("Sphere Drake") moves to confirm an arbitration award that invalidated six reinsurance contracts between Sphere Drake and Defendant All American Life Insurance Company ("All American"). All American filed a cross motion to vacate the arbitration decision, arguing that the circumstances reveal: (1) evident partiality on the part of one of the two arbitrators who rendered the award; (2) that the hearing denied All American fundamental fairness; (3) that the panel members exceeded their authority; and (4) that the panel exhibited a manifest disregard of the law. The arbitration award rests on a sentence that appears in All American's position statement submitted to the panel before the arbitration started. Specifically, in its position statement, All American stated that the intermediary to the reinsurance contracts was not All American's agent, a matter that had not previously been at issue in the case. Sphere Drake characterized this statement as a judicial admission, and the panel adopted that characterization. Based on this purported admission, the panel ruled that if the intermediary was not All American's agent, then All American could not have entered into any enforceable contracts, regardless of any other issues in the dispute, and, therefore, All American had no contracts with Sphere Drake to enforce. The third arbitrator filed a vigorous dissent.

For the reasons set forth below, the court concludes that because one of the two arbitrators failed to disclose a substantial attorney/client relationship with Sphere Drake, the arbitration

decision must be vacated on the grounds of evident partiality.

## BACKGROUND

Because the inquiry into an arbitrator's evident partiality depends on the particular facts and circumstances of each case, the events relevant to the cross motions at hand are set forth in detail below. *Morelite Const. Corp. v. New York City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 81 (2d Cir. 1984).

Sphere Drake is an English corporation with its principal place of business in Brighton, England. (Petition for Confirmation of Arbitration Panel's Award ("Confirmation Petition") ¶ 3, Exhibit E to Sphere Drake's Exhibits in Support of its Motion for Entry of a Protective Order ("S.D. Protective Order")). All American is an Illinois corporation with its principal place of business in Chicago, Illinois. (All American's Answer, Affirmative Defenses, and Counterclaims ("Answer") ¶ 4, Exhibit F to S.D. Protective Order.) On June 11, 1999, All American sent Sphere Drake a letter demanding arbitration with respect to balances allegedly due on several reinsurance contracts with Sphere Drake. (Confirmation Petition ¶ 7; Answer ¶ 7.) In the letter, All American designated Robert Mangino as one of the three arbitrators and requested that Sphere Drake also name an arbitrator. (All American's June 11, 1999 Arbitration Demand Letter ("Demand Letter"), Exhibit 4 to S.D. Protective Order.) Although Sphere Drake challenged whether the contracts committed the parties to arbitration, it nevertheless responded promptly, appointing Ronald A. Jacks an arbitrator for the dispute in the event the matter reached arbitration. (Sphere Drake's June 12, 1999 Letter in Response to Demand Letter, Exhibit 5 to S.D. Protective Order.) The parties agreed to have the third member of the panel, referred to as the "umpire," selected jointly by Mangino and Jacks. (Confirmation Petition ¶ 10, Answer ¶ 10.) After exchanging names, both parties agreed that Robert M. Huggins would serve as umpire and he accepted the position. (Affidavit of James Rubin ("Rubin Aff.") ¶ 13.)

All three arbitrators have considerable experience in reinsurance arbitration, are AIDA Reinsurance and Insurance Society ("ARIAS-U.S.")[1] certified,[2] and appear on the "Umpire List" comprised of ARIAS-U.S. certified arbitrators who have served on a panel for at least three insurance or reinsurance arbitration proceedings that resulted in a final award. (Sphere Drake's Statement of Undisputed Facts for its Motion for Summary Judgment Confirming the Arbitration Award ("S.D. Statement") ¶¶ 11-14.) Huggins has participated in more than thirty-five arbitrations as an arbitrator and in at least twenty as an umpire, Jacks in more than fifty-five arbitrations as an arbitrator and in more than twenty-five as an umpire, and Mangino in more than thirty-five arbitrations as an arbitrator and four as an umpire. (Id. at ¶ 11.) In addition to this extensive arbitration experience, Jacks and Mangino are founding directors of ARIAS-U.S. (Id. at ¶ 13.) Jacks is also a past president of the U.S. chapter of AIDA, the Association International de Droits des Assurances, an international insurance law organization, and is currently an honorary member of its Presidential Counsel. (Id. at ¶ 12.)

On February 1, 2001, the parties proposed to the Panel that each side submit a position statement before the organizational meeting scheduled for April 11, 2001.[3] (Id. at ¶ 15.) On March 21, 2001, Sphere Drake submitted its Pre-Organizational Meeting Statement of Issues and Counterclaim ("Sphere Drake Position Statement"). (Id. at ¶16.) In its statement, Sphere Drake

---

[1] ARIAS-U.S. is an organization formed to promote the improvement of the insurance/reinsurance arbitration process and to provide the training necessary to serve effectively on an insurance/reinsurance panel. (S.D. Statement ¶ 13.)

[2] To become an ARIAS-U.S. Certified Arbitrator, an individual must have at least ten years of specialized experience in the insurance/reinsurance industry, have some specified arbitration experience, be in good standing with the ARIAS-U.S., be sponsored in writing by an already certified or qualified individual, arrange for two seconding letters from certified or qualified individuals, and finally be approved as a certified arbitrator by a vote of no less than 2/3 of the full membership of the ARIAS-U.S. Board of Directors. (S.D. Statement ¶ 13.)

[3] From the time of All American's initial demand for arbitration in June 1999, to February 2001, when the parties started discussing the organizational meeting, the parties were involved in litigation in the Northern District of Illinois and the Seventh Circuit regarding whether the contracts at issue committed them to arbitration.

argued that it was not bound by the six purported contracts at issue because they were not entered into properly. (*Id.* at ¶ 17.) It further contended that those contracts were void because the intermediary, Stirling Cooke Brown Reinsurance Brokers Limited, and its affiliate, Stirling Cooke Brown Insurance Brokers Limited (collectively "Stirling Cooke"), knew that Sphere Drake's agent, Euro International Underwriters Ltd. ("EIU"), was acting in breach of its fiduciary duties in accepting the reinsurance business being brokered by Stirling Cooke. (*Id.*) Stirling Cooke, Sphere Drake alleged, knew that EIU was acting outside of its authority and had no capacity to contract.[4] (*Id.*) In this initial position paper, Sphere Drake did not contest the authority of Stirling Cooke to form binding contracts on behalf of All American. Rather, the argument, as understood by both parties, concerned whether Stirling Cooke was aware that EIU did not have authority to bind Sphere Drake in the manner it did. (All American's Memorandum of Law in Support of its Motion to Vacate ("A.A.'s Motion to Vacate") at p. 6.) Notably, each of the contracting parties acted through agents: All American acted through its underwriting agent WEB Management LLP ("WEB") and Sphere Drake through its agent EIU. Stirling Cooke acted as an intermediary between the two agents, WEB and EIU. Throughout the arbitration, Sphere Drake contended that EIU acted outside of its authority when purporting to enter into the contracts on its behalf and that they are, therefore, invalid. Sphere Drake never challenged the authority of Stirling Cooke or WEB to form contracts on behalf of All American.

All American responded with its statement of the case on April 4, 2001 (All American's Position Statement"). (S.D. Statement, ¶ 18.) All American contended that Sphere Drake's argument provided no defense to enforcement of the reinsurance agreements. Specifically, All American observed that where an agent (meaning Sphere Drake's agent EIU) acts with express written authority to bind its principal (Sphere Drake), the principal may not later shift the

---

[4] The record does not identify which of Stirling Cooke's employees are involved in the formation of the disputed contracts.

4

consequences of the agent's action to a third party solely because the transaction was not as profitable as the principal had hoped. (*Id.*) (All American's Position Statement, p. 2, Exhibit A to S.D. Protective Order.) All American's submission also includes the following statement, which Sphere Drake seizes upon here: "There was no agency relationship between Stirling Cooke and All American or between Stirling Cooke and WEB; Stirling Cooke had no authority to bind either All American or WEB and neither All American nor WEB entered into any form of agency agreement with Stirling Cooke." (*Id.* at p. 4.) This was the first time either party had addressed or even mentioned the agency relationships with respect to All American.

The parties and the arbitrators held an organizational meeting on April 11, 2001. (S.D. Statement, ¶ 20.) During this meeting, both arbitrators and the umpire disclosed their current and prior relationships with each other, with the parties and with the parties' counsel. (*Id.* at ¶ 21.) Arbitrator Jacks disclosed that, although he knew All American existed, this was his first contact with the company. (Transcript of April 11, 2001 Meeting, at p. 3, Exhibit B to S.D. Protective Order.) Regarding Sphere Drake, Jacks disclosed that he had "known of Sphere Drake over the years and of Sphere Drake's parent Odyssey," and that he was the party arbitrator for Sphere Drake on two pending arbitrations. (*Id.* at 3-4.) Umpire Huggins disclosed that he was a shareholder in American International Group, Inc., a company that had recently made a bid to acquire All American. (*Id.* at 5.) Huggins also disclosed that in early 1996, Sphere Drake's parent corporation, Fairfax, had retained him to head a due diligence team and that he also had been involved as an arbitrator for an affiliate of Sphere Drake, TIG. (*Id.*) Neither party objected to these disclosures, and the parties certified the panel as duly constituted and competent to hear and decide the dispute. (*Id.* at 6.)

During the organizational meeting, at Sphere Drake's request and over All American's objections, the panel granted permission for Sphere Drake to submit a case-dispositive motion based on All American's statements in its position paper. (S.D. Statement, ¶¶ 22-23.) Sphere

5

Drake argued that All American's statement in its position statement regarding the lack of agency between itself and both WEB and Stirling Cooke was a judicial admission warranting dismissal of the case on the merits with prejudice. (Sphere Drake's Motion for Judgment in its Favor on the Pleadings, at pp. 1-4, Exhibit 2 to S.D. Protective Order.) Sphere Drake contended that All American "admitted" that the reinsurance intermediary, Stirling Cooke, lacked the capacity to enter into the contracts at issue and thus no contracts were ever formed. (*Id.*)

On May 7, 2001, upon reviewing the transcript of the April meeting, Jacks announced that he realized he had neglected to disclose a prior relationship with a company related to Sphere Drake. (S.D. Statement, ¶¶ 24-25.) In his May 7 letter to the parties, Jacks explained:

> Several years ago I provided limited corporate advice to Jonathan Crawley, then President of Sphere Drake's Bermuda subsidiary. In that capacity I recommended that my former law firm, Mayer, Brown, & Platt, be retained to represent Sphere Drake (Bermuda) Ltd in an arbitration . . . involving a set of wholly unrelated issues which were settled shortly after the initial meeting of the Panel and Counsel.

(Jacks's May 7, 2001 Disclosure Letter, Exhibit C to S.D. Protective Order.) All American did not object to Jacks's revised disclosure.

On July 5, 2001, both arbitrator Jacks and umpire Huggins, with arbitrator Mangino in strong dissent, issued the Final Award granting Sphere Drake's Motion for Judgment on the Pleadings and dismissing the arbitration on the merits with prejudice. (Final Award, Exhibit 3 to S.D. Protective Order.) In the Final Award, Jacks and Huggins stated:

> All American's [position statement] . . . is a "Pleading," as defined by the relevant authorities . . . [and] as such, All American's statement . . . is a "Judicial Admission" as that term is defined by the relevant authorities, and thus is binding on All American as a matter of law and public policy. Therefore, since All American has formally and unequivocally admitted in its pleadings that: (1) there "was no agency relationship between Stirling Cooke and All American and WEB"; (2) "Stirling Cooke had no authority to bind either All American or WEB"; and (3) "neither All American nor WEB entered into any form of agency agreement with Stirling Cooke" (emphasis added), Stirling Cooke . . . was not legally competent to contract with Sphere Drake or . . . EIU, and there is no need for an evidentiary hearing on this issue.

6

(*Id.*)

Arbitrator Mangino voiced a strong dissent to the Final Award. He stated:

> [T]he basis of the panel majority decision [was] to give ambiguous wording on agency relationships provided in a statement of position, but clarified through briefs and oral arguments at the hearing on the Motion to Dismiss, the same weight as a pleading in a court proceeding. This technical reliance on the wording of a statement of position constitutes a denial of All American's right of due process and an extraordinary and unprecedented departure from applying industry practice and procedures to reinsurance disputes. All American was prevented from engaging in discovery, fully briefing the panel and presenting evidence and arguments at a final hearing on the merits of the dispute.

(Mangino's Dissent to Final Award, Exhibit 3 to S.D. Protective Order.) Mangino further urged that, "[i]n a motion to dismiss, especially in an arbitration proceeding, all inferences and factual issues should be construed in favor of the respondent. Here the panel did not give All American's explanation of its position on agency relationships appropriate weight." (*Id.*)

Shortly after the panel majority rendered its final decision, David Gilmartin, former in-house counsel for Continental Casualty Company ("CNA"), told Andrew Amer, counsel for All American, that Jacks had appeared as counsel of record for Sphere Drake itself in an arbitration commenced in 1996 (the "POMG Arbitration").[5] (Affidavit of Andrew S. Amer ("Amer Aff.") ¶ 2.) All American requested a transcript of the organizational meeting in the POMG Arbitration, but Sphere Drake refused, insisting that Jacks's May 7 letter adequately disclosed his involvement in the POMG Arbitration. (July 25, 2001 Letter from H.C. Wheeler to Amer, Exhibit 2 to Amer Aff.) In light of this refusal, All American served narrow discovery notices on Sphere Drake and the Mayer Brown law firm seeking production of the POMG Arbitration transcript and other information and documents regarding Jacks's attorney/client relationship with Sphere Drake. (Amer Aff. ¶ 6.) Although Mayer Brown did not raise any objections to the subpoena, Sphere Drake sought a protective order to prohibit this discovery. (Amer Aff. ¶ 7.) On October 31, 2001, this court denied Sphere Drake's

---

[5] It is not clear what prompted this discussion between Gilmartin and Amer.

motion for a protective order and granted All American's request for discovery. (Docket # 27.)

On November 14, 2001, Sphere Drake and Mayer Brown responded to All American's discovery notices. From these disclosures, All American learned that CNA commenced the POMG Arbitration in April of 1996, against Sphere Drake itself (not Sphere Drake's Bermuda subsidiary) to resolve a dispute over reinsurance coverage provided by Sphere Drake to POMG. (A.A.'s Motion to Vacate, p. 2.) The reinsurance slip at issue in the POMG Arbitration was issued on behalf of Sphere Drake and the caption of the arbitration shows that Sphere Drake was the respondent. (*Id.*)

The discovery also revealed that it was Jacks himself, then a partner at Mayer Brown, who was actively involved as Sphere Drake's counsel in that arbitration proceeding: he billed 379.35 hours over four years and generated $132,737.50 in legal fees. (*Id.*) As a firm, Mayer Brown billed total fees of $278,771.25 on the POMG matter. (*Id.*) Mayer Brown's new client memoranda for the POMG matter listed Jacks as the billing and responsible attorney, and listed the client as "Sphere Drake Underwriting Management (Bermuda) Limited." (S.D. Statement, ¶ 35.) All American also learned that Jacks worked on other matters related to Sphere Drake: Jacks billed 13 hours in connection with arbitration against Sphere Drake concerning a reinsurance claim by North American Manufacturing Insurance Company (the "NAMIC Arbitration"). (All American's Memorandum of Law in Opposition to Sphere Drake's Motion for Summary Judgment Confirming the Arbitration Award, p. 8.) And Jacks billed another 51.50 hours providing general corporate advice in connection with two matters for Sphere Drake's Bermuda subsidiary. (*Id.*) His total fees for these other matters amounted to $22,575.00.[6] (*Id.*) All American now argues that these circumstances reveal evident partiality on Jacks's part, requiring that the arbitration award be vacated.

---

[6] It is unclear from the record when Jacks performed work on these other matters for Sphere Drake.

## DISCUSSION

Once a dispute has been resolved through arbitration, the role of a reviewing court is extremely limited. *Moseley, Hallgarten, Estabrook & Weeden, Inc. v. Ellis*, 849 F.2d 264, 267 (7th Cir. 1988). All American, as the party challenging the arbitration award, bears the substantial burden of proving grounds for vacation. *Middlesex Mutual Ins. Co. v. Levine*, 675 F.2d 1197, 1201 (11th Cir. 1982).

A federal court may vacate an arbitration award where the challenging party shows that there was evident partiality on the part of any of the arbitrators. 9 U.S.C. § 10(a)(2).[7] Demonstrating evident partiality is a substantial task. The Seventh Circuit has explained that the showing requires "more than a mere appearance of bias." *Health Services Mgmt. Corp. v. Hughes*, 975 F.2d 1253, 1264 (7th Cir. 1992). Indeed, "[t]o set aside an award for arbitrator partiality, '[t]he interest or bias must be direct, definite and capable of demonstration rather than remote, uncertain or speculative.'" *Id.* quoting *Tamari v. Bache Halsey Stuart Inc.*, 619 F.2d 1196, 1200 (7th Cir. 1980). Case law on the subject reveals a "mood . . . . of reluctance to set aside arbitration awards for failure of the arbitrator to disclose a relationship with a party." *Merit Insurance Co. v. Leatherby Insurance Co.*, 714 F.2d 673, 682 (7th Cir. 1983). The Seventh Circuit has also observed nevertheless that, despite this definite reluctance, where "circumstances are such that a man of average probity might reasonably be suspected of partiality" and "the circumstances. . . [are] powerfully suggestive of bias," the language of the Federal Arbitration Act might require disqualification. *Id.* at 681. This is not to say, however, that a party must be able to show actual

---

[7] The parties dispute whether or not the defenses in § 10 of the Federal Arbitration Act are available where the applicable arbitration law is an international convention, The United Nations Convention on the Recognition and Enforcement of Foreign Arbitrational Awards. 9 U.S.C. § 201 *et seq.* According to Article V(1)(e) of the Convention, however, a court in the country under whose law the arbitration was conducted may apply domestic arbitration law in deciding whether to vacate or confirm the award. Therefore, both the Convention and § 10 of the FAA may be applied here. *Nat'l Educ. Corp. v. Martin*, No. 93 C 6247, 1995 WL 622267, at *3 (N.D. Ill. Oct. 20, 1995).

bias, for such a showing might very well be impossible. *Id.* at 682.

As the Supreme Court has explained, arbitrators are required to disclose any dealings that might give rise to the appearance of bias. *Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145, 149 (1968). Though seemingly straightforward, this requirement is the source, as this case demonstrates, of many claims of evident partiality. Addressing this issue, the Seventh Circuit has counseled that arbitrators should err on the side of disclosure in order to prevent attacks on their decisions. *United States Wrestling Fed. v. Wrestling Div. of the AAU, Inc.*, 605 F.2d 313, 319 (7th Cir. 1979). As the Supreme Court observed, "[w]e can perceive no way in which the effectiveness of the arbitration process will be hampered by the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias." *Commonwealth Coatings Corp.*, 393 U.S. at 149.

The arbitrators here purported to fulfill this disclosure requirement when, at the April 11 organizational meeting, each discussed his respective prior relationships with the parties, parties' counsel, and each other. On the basis of the seemingly benign disclosures made at this meeting, the parties certified the panel as duly constituted and competent to hear and decide the dispute.[8] All American accepted this panel under the misimpression, based on Jacks's representations at the time, that Jacks had merely "known of Sphere Drake over the years and of Sphere Drake's parent Odyssey," and that he was, at that time, the party arbitrator for Sphere Drake on two other

---

[8] The court is aware that most evident partiality cases concern alleged partiality on the part of the neutral arbitrator, or concern alleged partiality of panels composed entirely of purportedly neutral arbitrators. *See e.g., Commonwealth Coatings Corp.*, 393 U.S. at 146; *Delta Mine Holding Co. v. AFC Coal Properties, Inc.*, 280 F.3d 815, 817 (8th Cir. 2001). Jacks was a party-appointed, as opposed to a neutral, arbitrator. The court nevertheless concludes that the parties' respective right to approve of the panel before the arbitration began could only be meaningfully exercised to the extent it was based on a full disclosure. In this situation, the parties reasonably expected that the arbitrator appointed by the opposing side would follow the disclosure rules, so that each party could make an informed decision as to whether to approve the panel. Where the parties had the right to approve or disapprove of the panel, therefore, it makes sense to be equally concerned about the disclosures made by the party-appointed arbitrators, as about those of the neutral arbitrator.

10

pending matters. (Transcript of April Meeting at 4, 6-7.) Jacks stated that this account was "the nature and extent of [his] involvement to the best of [his] recollection." (*Id.* at 5.) He divulged no more about his relationship with Sphere Drake despite All American's counsel's pointed attempts to gauge its extent. For example, counsel for All American asked Jacks about the pending arbitrations: when they would get underway and whether the evidence would overlap with the present matter. (*Id.* at 6-7.) Upon receiving Jacks's assurances that he would not consider any evidence or insight gained from the other Sphere Drake arbitrations, All American's counsel was satisfied with Jacks's presence on the panel. (Id. at 7, 13.)

Jacks's apparent lack of candor at this meeting is troublesome. That Jacks did not fully explain the depth of his prior involvements with Sphere Drake is, by itself, disappointing. Worse, however, Jacks implied that he had no prior involvements with the company at all -- to the contrary, he had merely "known of Sphere Drake." Sphere Drake does not now suggest that Jacks somehow forgot about his past representation of Sphere Drake. Indeed, Sphere Drake has not offered, nor can the court conceive of, any satisfying explanation for Jacks's statements.

Nor was this Jacks's only misleading disclosure. In his May 7, 2001 letter, Jacks stated that at the April meeting, he "neglected to disclose that several years ago [he] provided *limited* corporate advice to . . . Sphere Drake's Bermuda subsidiary." (Jacks's May 7, 2001 Letter, emphasis added.) He further stated that it was in this capacity that he "recommended that [his] former law firm, Mayer, Brown & Platt, be retained to represent Sphere Drake (Bermuda) Ltd. in an arbitration . . . involving a set of wholly unrelated issues . . . ."[9] (Jacks's May 7, 2001 Letter.) On its face, this disclosure was no cause for alarm – a plain reading disclosed only that Jacks gave Sphere Drake limited corporate advice and suggested that Sphere Drake retain a law firm with which he was no longer affiliated. The reader would likely conclude that Jacks forgot to mention

---

[9] This arbitration was later identified by All American as the POMG Arbitration.

11

this matter earlier because, after all, he provided only limited advice before Sphere Drake retained his former colleagues at Mayer Brown. Although the letter conveys this impression, it is not at all accurate: As All American learned after the final award, Jacks's "limited corporate advice" in fact amounted to more than four hundred hours of work performed over four years. And while "former law firm" was an accurate description of Mayer, Brown & Platt at the time Jacks wrote the letter, Mayer, Brown & Platt was not his former law firm at the time he advised Sphere Drake to retain it. To the contrary, Jacks was a partner of Mayer, Brown at the time. He "referred" Sphere Drake to his own current firm, and he himself performed a great deal of the legal work for the client.

Furthermore, Jacks's assertion that he represented only the Bermudan subsidiary of Sphere Drake is plainly inaccurate. The fact that Mayer, Brown & Platt's billing records identify the Bermuda subsidiary as the party charged for the firm's services is not conclusive as to the identity of Jacks's client. Jacks was counsel of record for Sphere Drake itself in the POMG arbitration. Sphere Drake was the named reinsurer on the contract in dispute in that arbitration, and it assumed 100% of the risk. The Bermuda subsidiary Jacks later characterized as his client merely acted as the underwriting agent on the disputed reinsurance slip and assumed none of its liability. Jacks billed a total of 379.35 hours to this matter, earning a fee of $132,737.50. He also failed to disclose 13 hours of work on behalf of Sphere Drake in the NAMIC Arbitration, and another 51.25 hours of advice to Sphere Drake's Bermuda subsidiary.

All American argues that Jacks's failure to disclose the substantial work he did on behalf of Sphere Drake demonstrates his evident partiality, urging that the only explanation for his silence is a purposeful intent to deceive All American. Courts are disinclined to set aside arbitral awards based on evident partiality, in part because it is rare that a party can make a showing sufficient to warrant a such finding. Mindful of these precedents, the court finds that All American has met its substantial burden in this case.

First, it is clear that the relationship between Jacks and Sphere Drake was more substantial

12

than the relationships the Seventh Circuit has found to be trivial or lacking such personal, professional, social or financial intimacy as would "cast serious doubt on [the arbitrator's] impartiality." *Merit Ins. Co.*, 714 F.2d at 680. For example, in *Merit*, where the neutral arbitrator did not disclose that he had worked under the president of one of the parties when they both worked for another company, the Seventh Circuit observed that the relationship had ended 14 years before the arbitration, it had been distant and impersonal, and the arbitrator had no financial stake in the arbitration's outcome. *Id.* The court concluded that the failure to disclose a relationship of this kind did not constitute evident partiality. *Id.*

Similarly, in *Health Services Mgmt. Corp.*, two of three arbitrators each disclosed that they knew the architect involved in the arbitration. One had worked in the same office 20 years before the arbitration and saw the architect about once a year since that time, and the other reported that the architect worked at the same firm with him for a summer years earlier and that he had seen him twice in the last four or five years at meetings. 975 F.2d at 1255. Both indicated that their prior relationships would have no prejudicial effect on their decision, and the opposing party's counsel stated that he would rely on these representations. *Id.* The Seventh Circuit found that counsel had accepted the arbitrators with knowledge of their past relationship to the party architect. The court noted, further, that the relationships at issue were minimal and that no close association ever existed between either of the arbitrators and the party architect. *Id.* at 1264. In another case, where the arbitrator's law firm, but not the arbitrator himself, represented an entity indirectly affilicated with one of the arbitral parties, the Seventh Circuit concluded that the connection was "too 'remote, uncertain, and speculative' to require the arbitration decision [involving the U.S. Wrestling Federation] to be set aside." *United States Wrestling Federation v. Wrestling Division of the AAU, Inc.*, 605 F.2d 313, 315-16 (7th Cir. 1979.)

In this court's view, Jacks's four-year attorney-client relationship with Sphere Drake demonstrates a far more intimate connection to Sphere Drake than any of the more tangential

13

relationships that the Seventh Circuit found inconsequential for evident partiality purposes. What is at least as important as the connection itself, however, is the negligent or even intentional inadequacy of Jack's disclosure of the relationship. The court is unaware of any case where an arbitrator has offered such an ineffective description of his connection to a party. In one case that appears to come close, the court vacated the resulting arbitration award: In *Kaiser Foundation Hospitals, Inc. v. Coburn*, 19 Cal. App. 4th 513 (Cal. Ct. App. 1993), the neutral arbitrator never disclosed the fact that he had served previously several times as party arbitrator for Kaiser Foundation Hospitals, Inc. ("Kaiser"). Two years later, long after he was selected, Kaiser's counsel wrote a letter formally accepting the neutral arbitrator, pointing out that Kaiser accepted him "'even though he has sat as a claimant's party arbitrator in other cases against my client, as a neutral in other cases and even as a party arbitrator on behalf of my client.'" *Id.* at 516. Affirming the trial court's decision vacating the award, the court observed that the arbitrator's failure to reveal his relationship with a party might be overcome if the important facts are actually revealed. *Id.* at 517. It concluded, however, that the "terse, and essentially misleading, phraseology of counsel's letter of acceptance, did not adequately fulfill that obligation here," and upheld trial court's decision to vacate the arbitration award. *Id.* The letter written by counsel in *Kaiser* was arguably more informative and straightforward about the fact that the arbitrator at issue had been a party arbitrator for Kaiser in the past, than was Jacks's letter about his past legal representation of Sphere Drake.

Significantly, courts are quick to conclude that there was no evident partiality where an arbitrator has offered a straightforward and honest disclosure of the relationship at issue. *Tamari v. Bache Halsey Stuart Inc.*, 619 F.2d 1196, 1199 (7th Cir. 1980), illustrates the importance of such disclosure. In that case, an employee of Bache Halsey Stuart Inc. testified at an arbitration proceeding concerning the production of certain documents pursuant to subpoena. *Id.* at 1198. Prior to giving this testimony, the employee had entered negotiations for employment with the employer of one of the arbitrators. *Id.* The negotiations remained confidential until an agreement

14

was reached, but once he agreed to work for the arbitrator's employer, the testifying witness promptly disclosed the new employment relationship to the panel and the parties. *Id.* at 1199. The arbitrator at issue had nothing to do with the negotiations, nor was he involved in the decision to hire the witness; he nevertheless volunteered to withdraw and did withdraw upon the objecting party's request. *Id.* In an action to set aside the arbitration award, the objecting party argued that the taint from the withdrawn arbitrator's presence on the panel required that the entire panel recuse themselves, and that the failure to do so demonstrated evident partiality. *Id.* at 1198. The Seventh Circuit was unpersuaded; the court concluded that even if the withdrawn arbitrator "had some nontrivial interest in the proceedings because his employer had hired the employee of a party, any appearance of bias was dispelled by the forthright manner in which the situation was handled once it became known." *Id.* at 1199.

In *United States Wrestling Federation*, the Seventh Circuit emphasized the Supreme Court's guidance that disclosure should be the default: "[W]here the arbitrator has a substantial interest in a firm which has done more than trivial business with a party, that fact must be disclosed. If arbitrators err on the side of disclosure, as they should, it will not be difficult for courts to identify those undisclosed relationships which are too insubstantial to warrant vacating the award." 605 F.2d at 319, quoting *Commonwealth Coatings*, 393 U.S. at 150. An arbitrator in that case did not disclose that attorneys in his law firm represented Northwestern University. In an appeal from the district court order confirming the arbitration award, the Wrestling Division argued that because the United States Wrestling Federation was principally funded by the National Collegiate Athletic Association ("NCAA"), and Northwestern University is a member of the NCAA, the arbitrator's failure to disclose his law firm's relationship to Northwestern demonstrated evident partiality. *United States Wrestling Federation*, 605 F.2d at 317-18. The Seventh Circuit concluded that the arbitrator's connection to the United States Wrestling Federation was too remote and trivial to render the failure to disclose it problematic. *Id.* In reaching this conclusion the court noted that it

15

needed to assess the arbitrator's connection to the Wrestling Federation only because the arbitrator's apparent failure to disclose left the arbitration award subject to attack. *Id.* at 320.

The Eleventh Circuit has also emphasized that evident partiality is shown where an "arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists." *Gianelli Money Purchase Plan and Trust v. ADM Investor Servs., Inc.*, 146 F.3d 1309, 1312 (11th Cir. 1998). The sole arbitrator in that case did not disclose that his law firm had represented Kent Kelley, the individual whose alleged wrongdoing led to an agency-theory claim against ADM. *Id.* Kelley was president of Basic Commodities, Inc., a company which contracted to bring commodities trading customers to ADM, *Id.* at 1310. Plaintiff Gianelli was one such customer. When his account went south, Gianelli filed a claim against ADM on the theory that ADM was responsible for Kelly's misconduct. *Id.* Prior to the arbitration, Gianelli discovered that the arbitrator's firm represented Kelley in a securities case. *Id.* The arbitrator himself was unaware of this representation by other lawyers in his firm, while Kelley claimed (falsely) that this representation by the arbitrator's firm was an isolated occurrence. *Id.* Following an award in ADM's favor, Gianelli learned that the arbitrator's firm had in fact represented Kelley on a number of occasions and moved to vacate the award on evident partiality grounds. *Id.* The Eleventh Circuit reversed the district court's decision vacating the arbitration award because there was no evidence that the arbitrator was actually aware of his firm's representation of Kelley. *Id.* at 1313. As noted, Sphere Drake has not offered any such explanation for Jacks's failure to be completely forthcoming. Nor could Jacks, who personally represented Sphere Drake as recently as 1997, credibly assert that he was unaware of his firm's involvement on Sphere Drake's behalf.

As reflected in the cases reviewed here, courts are often persuaded that there is no evident partiality when the arbitrator did not know about the relationship alleged to constitute a conflict. *See e.g., Al-Harbi v. Citibank, N.A.*, 85 F.3d 680, 682 (D.C. Cir. 1996), *Peoples Security Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141, 145-46 (4th Cir. 1993). And conversely, where the

16

arbitrator knew of, but failed to disclose, a significant relationship to a party, courts have found evident partiality. *Olson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 51 F.3d 157, 158-59 (8th Cir. 1995) is such a case. In *Olson*, one of the arbitrators disclosed that he was employed by a financial services firm, but did not disclose that he was its vice-president and chief financial officer. *Id.* at 159. He further failed to disclose that his firm did a substantial amount of business with Merrill Lynch, a party to the arbitration. *Id.* The court found that as a high-ranking officer in a firm doing more than trivial business with a party to the arbitration, the arbitrator's failure to disclose the relationship showed evident partiality and required that the award be vacated. *Id.* at 160. Similarly, in *Middlesex Mutual Ins. Co.*, the neutral arbitrator knew, but did not disclose, that his family-owned insurance company was involved in litigation with Middlesex. 675 F.2d at 1201-02. The neutral arbitrator and one other arbitrator rendered a $1,200,000 award in favor of the claimant and against Middlesex. *Id.* at 1199. Finding the arbitrator's claimed bad-memory excuse "spurious," the Eleventh Circuit concluded that the failure to disclose this significant relationship displayed evident partiality and upheld the district court's decision to vacate the award.

In the case before this court, Sphere Drake does not argue that Jacks made a forthright and accurate disclosure. His first statement that he merely "knew of" Sphere Drake, paired with his second disclosure that he had given the company "limited corporate advice" and advised them to retain his "former law firm," were at minimum deficient and at worst might be construed as a calculated effort to obscure his more significant connections to Sphere Drake. The Supreme Court in *Commonwealth Coatings Corp.* faced a similar situation when it found evident partiality on the part of an arbitrator in that case: "[W]e have no reason, apart from the undisclosed business relationship, to suspect him of any improper motives," but neither the arbitrator nor the party "gave to petitioner even an intimation of the close financial relations that had existed between them for a period of years." 393 U.S. at 147-48. In *Commonwealth*, the neutral arbitrator did not disclose that, as an engineering consultant, he had rendered services to one of the parties to the arbitration

17

on a repeated and significant basis over a five year period, and had even provided consulting services on the very projects at issue in the arbitration. *Id.* at 146. The Supreme Court concluded that the failure to disclose this significant relationship was, standing alone, sufficient to warrant setting aside the arbitration award on the basis of the arbitrator's evident partiality. *Id.* at 149. Likewise, this court concludes that Jacks's failure to disclose, and apparent attempts to conceal, his past attorney-client relationship with Sphere Drake establishes the kind of intimate professional relationship that casts serious doubt on Jacks impartiality. His behavior deprived "the parties who are in the best position to judge an arbitrator's partiality, a chance to reject or accept an arbitrator with full knowledge of the arbitrator's connections." *Olson*, 51 F.3d at 160.

The court recognizes its role is not to review the substance of the panel's decision. Nevertheless, the court notes at least some concern about the unique manner in which the panel swiftly resolved the dispute in Sphere Drake's favor, without hearing the evidence and without considering the merits of the case at all. *Compare Tinaway v. Merrill Lynch & Co., Inc.*, 658 F. Supp. 576, 579 (S.D.N.Y. 1987) (where court could not infer from the record any basis for the arbitrators' decision to hold Merrill Lynch liable, but to reduce the damage award from the claimed $35,720 loss, to just $2,000, the court concluded this unexplained reduction could "only represent 'evident partiality' on the part of the arbitrators towards Merrill Lynch.")

Finally, Sphere Drake contends that All American waived its right to assert evident partiality by failing to raise the issue after Jacks's supplemental disclosure letter. Typically, courts will not allow a party to raise an evident partiality claim as a ground for vacating an award where the party was aware of, but failed to raise the claim during the arbitration process. *Kiernan v. Piper Jaffray Cos.*, 137 F.3d 588, 593 (8th Cir. 1998) (party made strategic choice to go forward with arbitrator on the panel after receiving supplemental disclosures from her that raised concerns about potential evident partiality and could not, after losing the arbitration, raise evident partiality claim because they chose to ignore the basis for that claim during the arbitration); *Cook Indus. v. Itoh & Co.*, 449

F.2d 106, 107-08 (2d Cir. 1981) (party was fully aware of arbitrator's relationship to opposing party during arbitration but raised no objection during proceedings, and could not after receiving an unfavorable result "complain of a situation of which he had knowledge from the first"). The claim is not waived here, however. As this court has noted, the supplemental disclosure was misleading, far from complete, and, contrary to Sphere Drake's contention, does not clearly disclose a prior attorney/client relationship with Sphere Drake. This was not a situation where All American knew that Jacks had a potentially substantial connection to Sphere Drake and chose to overlook it in the interest of moving forward. To the contrary, Jacks's letter conveyed the impression that his only relationship to Sphere Drake was that he had provided limited corporate advice to its subsidiary. All American was not unreasonable in accepting this disclosure, and to the extent Jacks understated or misrepresented his relationship with Sphere Drake, All American did not waive its right to raise the issue.

## CONCLUSION

For the above reasons, Sphere Drake's motion for summary judgment confirming the arbitration award (36-1) is denied. The award in favor of Sphere Drake is vacated without prejudice to further arbitration proceedings.

ENTER:

Dated: May 17, 2002

REBECCA R. PALLMEYER
United States District Judge