# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5226 | **DATE** | 3/8/2004 |
| **CASE TITLE** | Sphere Drake vs. All American Life Insurance Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. All American Life Insurance Company's Renewed motion to vacate (Doc. No. 84) is denied. Sphere Drake Insurance Company's limited's Motion to Strike (Doc. No. 90-1) is denied as moot. Sphere Drake's request to confirm the Final Award is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| No notices required, advised in open court. | | **Document Number** |
| No notices required. | number of notices | |
| ✓ Notices mailed by judge's staff. | MAR 09 2004 | |
| Notified counsel by telephone. | date docketed | 98 |
| Docketing to mail notices. | docketing deputy initials | |
| Mail AO 450 form. | 3/8/2004 | |
| Copy to judge/magistrate judge. | date mailed notice | |
| ETV   courtroom deputy's initials | ETV   mailing deputy initials | |

U.S. DISTRICT COURT CLERK

Date/time received in central Clerk's Office

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SPHERE DRAKE INSURANCE LIMITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 01 C 5226 |
| | ) | |
| ALL AMERICAN LIFE INSURANCE | ) | Judge Rebecca R. Pallmeyer |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED

MAR  9 2004

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Sphere Drake Insurance Limited ("Sphere Drake") seeks to confirm an arbitration award that invalidated six reinsurance contracts between Sphere Drake and Defendant All American Life Insurance Company ("All American").[1]  In response to Sphere Drake's motion for summary judgment, All American filed a cross motion to vacate the arbitration decision on several grounds, including the evident partiality of one of the panel members.  This court granted All American's motion on that basis, *see Sphere Drake Ins. Ltd. v. All American Life Ins. Co.*, No. 01 C 5226, 2002 WL 1008464 (N.D. Ill. May 17, 2002), but the Seventh Circuit reversed.  *Sphere Drake Ins. Ltd. v. All American Life Ins. Co.*, 307 F.3d 617 (7th Cir. 2002), *cert. denied*, 123 S. Ct. 1754 (2003).  All American has now renewed its motion to vacate on three other grounds: (1) All American did not receive a fundamentally fair hearing; (2) the panel members exceeded their authority in issuing the decision; and (3) the panel exhibited a manifest disregard of the law. Sphere Drake opposes the motion and also seeks to strike certain new evidence submitted by All American in support of that motion.  For the reasons set forth here, both motions are denied.

---

[1]        On December 31, 2002, All American merged into American General Life Insurance Company and ceased to exist as a separate corporate entity.  (Memorandum of Law in Support of All American Life Insurance Company's Renewed Motion to Vacate (hereinafter "Def. Mem."), at 1 n.1.)  To avoid confusion, the court will continue to refer to Defendant as All American.

## BACKGROUND

The facts of this case have been presented in this court's May 17, 2002 Memorandum Opinion and Order, *see Sphere Drake Ins.*, 2002 WL 1008464, at *1-5, and in the Seventh Circuit's decision in *Sphere Drake Ins.*, 319 F.3d at 619-20. This opinion assumes the reader's familiarity with these earlier decisions.

All American is an insurance company that has underwritten reinsurance for insurers issuing personal accident and occupational coverage directly to individuals and employers.[2] (Affidavit of Andrew S. Amer ("Amer Aff.") ¶ 2.) As part of those reinsurance underwriting activities, All American purchased its own reinsurance protection, called retrocessional coverage, to further spread the risk.[3] (*Id.*) In 1997, All American purchased, through its underwriting agent WEB Management LLP ("WEB"), retrocessional protection from Euro International Underwriting Ltd. ("EIU"), which was Sphere Drake's underwriting agent. (*Id.*) The retrocessional protection consists of seven reinsurance contracts. Stirling Cooke Brown Reinsurance Brokers Limited ("Stirling Cooke"), which purported to act on behalf of All American, is the reinsurance broker that placed the majority of the business EIU had accepted on behalf of Sphere Drake. (Pl. Response, at 2.)[4]

---

[2]     "Reinsurance is the practice whereby primary insurers who have assumed risk from their policy holders in exchange for premiums, cede portions of that risk to reinsurers, in exchange for premiums, pursuant to reinsurance agreements. In turn, the reinsurers, often, cede portions of the assumed risk to their own reinsurers. In this way, the risk associated with any one policyholder is spread among a variety of insurers." *Stephens v. American Int'l Ins. Co.*, 66 F.3d 41, 42 (2d Cir. 1995).

[3]     "Retrocessional agreements are agreements by which an insurance company which has agreed to reinsure a risk assigns all or a portion of that risk to a reinsurer who accepts such risk. In effect, a retrocessional agreement is reinsurance of reinsurance." *United Equitable Ins. Co. v. Reinsurance Co. of America, Inc.*, 157 Ill. App. 3d 724, 726, 510 N.E.2d 914, 916 n.3 (1st Dist. 1987).

[4]     Sphere Drake Insurance's Response in Opposition to All American's Renewed Motion to Vacate is cited as "Pl. Response, at ___."

All American paid Sphere Drake premiums under the reinsurance contracts until March 1999, when Sphere Drake sought to rescind the contracts and return the premiums. (Amer Aff. ¶ 3; Ex. C15 to Pl. 56.1, at 5-7.)[5] Sphere Drake claims it discovered that Stirling Cooke had "induced and colluded with EIU to breach the fiduciary duties EIU owed to Sphere Drake, and induced EIU to operate its agency for the benefit of Stirling Cooke and its affiliates rather than for the benefit of Sphere Drake." (Pl. Response, at 2.) One of those Stirling Cooke affiliates was WEB, All American's managing general agent. (Ex. C15 to Pl. 56.1, at 1.) As a result of EIU's and Stirling Cooke's collusive activities, Sphere Drake alleges, there were "multiple accumulations by Sphere Drake on the same losses, concentrating and often spiraling rather than transferring or dissipating the risk." (Ex. E to Amer Aff., at 4.) In addition, "the vast majority of this business was written on terms that were obviously and profoundly uneconomical to Sphere Drake."[6] (Id.)

Sometime after March 1999, Sphere Drake initiated court proceedings against EIU and Stirling Cooke in England.[7] (Ex. N to Pl. 56.1, at 27; Pl. Response, at 2.) On June 11, 1999, All American commenced arbitration proceedings against Sphere Drake in the United States. The parties ultimately agreed to submit six of the seven contracts to an arbitration panel consisting of two party-appointed arbitrators, Robert Mangino for All American and Ronald A. Jacks for Sphere Drake, and a third arbitrator, Robert M. Huggins, who was selected jointly by both parties. (Pl. 56.1

---

[5]     Sphere Drake's 56.1(a) Statement of Undisputed Facts, filed on November 30, 2001, is cited as "Pl. 56.1 ¶ __."

[6]     For a detailed description of the nature of Sphere Drake's objections to the business brokered by EIU, Stirling Cooke, and All American, see Ex. E to Amer Aff., at 1-24.

[7]     The English case alleges a conspiracy between Stirling Cooke and EIU in connection with their reinsurance activities with Sphere Drake. (Ex. N to Pl. 56.1, at 27.) The parties do not say when exactly the English case was filed. In December 2002, the English commercial court concluded a year-long trial, and the parties are currently awaiting a decision in that case. (Pl. Response, at 2.)

¶¶ 7-10.) The seventh contract is the subject of pending litigation before Judge William T. Hart of this court, *Sphere Drake Ins. Ltd. v. All American Life Ins. Co.*, No. 99 C 4573.

After the parties had appointed the arbitration panel on the six contracts, they agreed to submit position statements to the panel members setting forth the issues and defenses. (Pl. Response, at 3; Def. Mem., at 7.) The parties agreed that Sphere Drake would submit its position statement first, followed by All American. In its position statement, Sphere Drake argued, in part, that the six contracts were void *ab initio* because All American's agent, Stirling Cooke, knew that Sphere Drake's agent, EIU, was acting outside the scope of its authority in accepting the business brokered by Stirling Cooke. (Pl. 56.1 ¶ 17; Ex. E to Amer Aff., at 1.) All American responded that EIU had proper authority to enter into the contracts with Sphere Drake and that they were all valid and enforceable. In an apparent attempt to avoid any risk that All American would be held responsible if Stirling Cooke were found to know about EIU's allegedly limited authority, All American also stated:

> Simply put, there was no agency relationship between Stirling Cooke and All American or between Stirling Cooke and WEB; Stirling Cooke had no authority to bind either All American or WEB and neither All American nor WEB entered into any form of agency agreement with Stirling Cooke.

(Ex. F to Amer Aff., at 4.) *See also Sphere Drake Ins.*, 307 F.3d at 619.

At an April 11, 2001 organizational meeting, Sphere Drake requested permission to file a motion for judgment on the pleadings, claiming that All American had admitted in its position statement that Stirling Cooke did not have authority to bind All American. In Sphere Drake's view, All American had made a judicial admission that Stirling Cooke did not have the capacity to make a valid offer to EIU and, thus, there were no binding contracts. (Pl. 56.1 ¶ 41; Ex. E to Pl. 56.1, at 45-48; Ex. C2 to Pl. 56.1, at 5.) All American responded that the position statements did not constitute pleadings and that the statements were being taken out of context. (Ex. C16 to Pl. 56.1, at 8-10.) All American also argued that (1) Stirling Cooke had authorization from All American's

4

underwriting agent, WEB, to bind the coverage; (2) Sphere Drake never argued in its opening position statement that Stirling Cooke lacked such authority; (3) Sphere Drake waived its right to contest the existence of the contracts by accepting premium payments; (4) Stirling Cooke was All American's agent under Illinois agency law; and (5) granting Sphere Drake's motion would deprive All American of a fair hearing by denying the company its right to take discovery and present evidence. (Def. Mem., at 9; Ex. K to Amer Aff.)

On July 5, 2001, after reviewing the parties' written submissions and hearing oral argument on the motion, the arbitration panel, in a 2 to 1 decision, issued a Final Award in Sphere Drake's favor. The panel found that All American's position statement was a pleading and that the company had made a judicial admission that Stirling Cooke was not authorized to contract with EIU. (Ex. C3 to Pl. 56.1, at 1-2; Ex. M to Amer Aff., at 1-2.) The arbitrator selected by All American, Robert Mangino, vigorously dissented, finding the majority's decision an "extraordinary and unprecedented departure from applying industry practice and procedures to reinsurance disputes." Mangino stated that All American did not receive due process because it was not permitted to engage in discovery and present evidence in the case. He also disagreed with the majority's conclusion that there was no binding contract, noting that "Sphere Drake accepted premiums pursuant to the contracts from All American." (Ex. N to Amer Aff.)

On July 6, 2001, Sphere Drake moved this court to confirm the Final Award and All American responded with a cross motion to vacate. On May 17, 2002, the court granted All American's motion, finding that Ronald Jacks, Sphere Drake's chosen arbitrator, demonstrated evident partiality. *Sphere Drake Ins.*, 2002 WL 1008464, at *6-11. The Seventh Circuit reversed that decision on October 9, 2002. *Sphere Drake Ins.*, 307 F.3d at 620-23. On February 19, 2003, All American renewed its motion to vacate, arguing that it did not receive a fair hearing and that the arbitrators exceeded their authority and improperly disregarded Illinois law in reaching their decision. In support of that motion, All American seeks to introduce certain new evidence that, it

5

says, demonstrates Stirling Cooke's authority to bind the six contracts at issue: trial testimony from the case pending before the English commercial court (the "UK Action"), and discovery conducted in the case pending before Judge Hart (the "Unicare Litigation"). Sphere Drake opposes the motion to vacate and has moved to strike all references to this additional evidence.

## DISCUSSION

"Federal courts extend extraordinary deference to the decisions of arbitrators," and once a dispute has been resolved through arbitration, the role of a reviewing court is extremely limited. *Stulberg v. Intermedics Orthopedics, Inc.*, 997 F. Supp 1060, 1063 (N.D. Ill. 1998) (citing *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36-37 (1987)); *Moseley, Hallgarten, Estabrook & Weeden, Inc. v. Ellis*, 849 F.2d 264, 267 (7th Cir. 1988). "The court may not 'consider the disputants' arguments afresh,' *Dean v. Sullivan*, 118 F.3d 1170, 1171 (7th Cir. 1997), nor may it overturn the arbitrator's decision on the ground that the arbitrator committed serious error." *Ganton Technologies, Inc. v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, U.A.W., Local 627*, __ F. 3d __, 2004 WL 253562 (7th Cir. Feb. 12, 2004). As the party challenging the arbitration award, All American bears the substantial burden of proving grounds for vacation. *Middlesex Mutual Ins. Co. v. Levine*, 675 F.2d 1197, 1201 (11th Cir. 1982).

All American claims that the Final Award must be vacated because (1) All American was denied a fundamentally fair hearing; (2) the panel members exceeded their authority in issuing the award; and (3) the panel exhibited a manifest disregard of the law. The court addresses each argument in turn.

## I.    Fundamentally Fair Hearing

A federal court may vacate an arbitration award where the challenging party shows that "the arbitrators were guilty of misconduct in refusing to . . . hear evidence pertinent and material to the

controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). As the Seventh Circuit has stated, "[i]t is clear that an arbitrator must provide a fundamentally fair hearing." *Generica Ltd. v. Pharmaceutical Basics, Inc.*, 125 F.3d 1123, 1129-30 (7th Cir. 1997) (citing *Iran Aircraft Indus. v. Avco Corp.*, 980 F.2d 141, 146 (2d Cir. 1992) ("an arbitral award should be denied or vacated if the party challenging the award proves that he was not given a meaningful opportunity to be heard as our due process jurisprudence defines it").

A hearing is fundamentally fair if it "meets the minimal requirements of fairness – adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator." *Slaney v. International Amateur Athletic Federation*, 244 F.3d 580, 592 (7th Cir. 2001). At the same time, parties who have chosen to submit their disputes to arbitration "should not expect the same procedures they would find in the judicial arena." *Id.* (citing *Generica*, 125 F.3d at 1130). An arbitrator must give the parties an adequate opportunity to present their evidence and arguments, but it is only when "the exclusion of relevant evidence actually deprived a party of a fair hearing that it is appropriate to vacate an arbitral award." *Id.*

All American contends that the arbitration hearing was fundamentally unfair because (1) All American never in fact admitted that Stirling Cooke lacked authority to bind the reinsurance contracts; (2) All American's position statement was not a "pleading" and did not support dismissal "on the pleadings"; and (3) the purported admission is not dispositive of all the claims.

## A.    The Admission

The arbitration panel agreed with Sphere Drake that All American had admitted that Stirling Cooke did not have authority to bind the six contracts because it did not have an agency relationship with All American or WEB:

> Simply put, there was no agency relationship between Stirling Cooke and All American or between Stirling Cooke and WEB; Stirling Cooke had no authority to bind either All American or WEB and neither All American nor WEB entered into any form of agency agreement with Stirling Cooke.

7

(Ex. F to Amer Aff., at 4.) All American argues that the panel misconstrued these statements which, it says, relate to "Stirling Cooke's lack of any *general* agency authority to act on behalf of All American or WEB, not the more narrow issue of whether Stirling Cooke had received specific instructions from WEB to bind the six contracts." (Def. Mem., at 15.) In support of this interpretation, All American notes the following additional language from the same paragraph in its position statement:

> The only relationship between Stirling Cooke and WEB was that of a silent investor twice removed, with no control over any management or underwriting decisions whatsoever. Rather, Stirling Cooke served only as the "intermediary" between WEB and EIU – nothing more. Accordingly, Sphere Drake may not impute Stirling Cooke's knowledge and conduct to All American or WEB.

(Ex. F to Amer Aff., at 4; Def. Mem., at 15.) All American claims that its position statement cannot be read to address Stirling Cooke's legal competence to enter into the reinsurance contracts because Sphere Drake's position statement never challenged such competence. (Def. Mem., at 16.)

The flaw in All American's position is that "[f]actual or legal errors by arbitrators – even clear or gross errors – do not authorize courts to annul awards." *Flexible Mfg. Sys. Pty. Ltd. v. Super Products Corp.*, 86 F.3d 96, 100 (7th Cir. 1996) (quoting *Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 333 (7th Cir. 1995)). Though couched in terms of its right to receive a fair hearing, All American's argument essentially asks this court to find that the panel's interpretation of the two sentences at issue was wrong. To allow such a review would transform arbitration from "a commercially useful alternative method of dispute resolution into a burdensome additional step on the march through the court system. That is why courts will not overturn an arbitration decision for mere errors of judgment as to law or fact." *Id.* (citing *Eljer Mfg., Inc. v. Kowin Development Corp.*, 14 F.3d 1250, 1255 (7th Cir. 1994)). All American had an opportunity to brief the issue and present oral argument before the panel; in fact, All American presented the very arguments it has raised here regarding

the "proper" interpretation of the disputed statements. The court will not vacate the award merely because the panel did not agree with All American's interpretation.

## B.    The Pleading

All American next argues that the panel erred in treating the parties' position statements as formal "pleadings" for purposes of a motion for judgment on the pleadings. All American views position statements as informal documents designed to provide arbitrators with an overview of the case, noting that unlike a judicial complaint, position statements are not required under the relevant arbitration clause or applicable federal arbitration law. (Def. Mem., at 17) (citing *Practical Guide* (ARIAS U.S.), Chap. III, at 2 (suggesting that parties should submit position statements "to apprise the [arbitration] panel, generally, of the background of the case and to provide a frame of reference for the procedural decisions the panel will make at the Organization Meeting")). Sphere Drake claims that position statements and judicial pleadings both serve a notice function, and argues that the panel appropriately concluded that All American should not be permitted to change its facts mid-stream. (Pl. Response, at 14-16.)

The court does not see anything inherently improper in the panel's decision to treat the position statements as "pleadings" that may contain judicial admissions. In the parallel Unicare Litigation, Judge Hart expressly stated that position statements before arbitration panels are the equivalent of "pleadings." *Odyssey Re (London) Ltd. v. All American Life Ins. Co.*, No. 99 C 4573, slip op., at 14-15 (Docket No. 28) (N.D. Ill. Mar. 30, 2000) (Illinois International Commercial Arbitration Act provides for filing a statement of the claimant's claim and a statement of respondent's defense; "[t]hat would be the equivalent of pleadings in a court action"). In other contexts, courts have found position statements susceptible to interpretation as judicial admissions. *See, e.g., N.L.R.B. v. United Sanitation Serv., Division of Sanitas Serv. Corp.*, 737 F.2d 936, 940 (11th Cir. 1984) (in unfair labor practices case, employer's position statement "constitute[d] an

admission that a key meeting . . . actually took place"); *Frazier v. Indiana Dep't of Labor*, No. IP01-198CTK, 2003 WL 21254567, at *4 (S.D. Ind. Mar. 24, 2003) ("an employer's position statement in an EEOC proceeding may be admissible [at trial] to the extent it constitutes an admission"); *Khan v. Sanofi-Synthelabo, Inc.*, No. 01 Civ. 11423JSMDF, 2002 WL 31720528, at *3 (S.D.N.Y. Dec. 3, 2002) ("the EEOC Position Statement may stand as a party admission").

The mere fact that Sphere Drake submitted its position statement first does not mean that All American's position statement could not contain judicial admissions or be deemed a pleading. (Def. Mem., at 18.) All American agreed to that schedule and cites no authority for the proposition that the order in which position statements are filed is determinative on either issue. Significantly, All American did set forth its claims and counterclaim defenses in its position statement (titled "All American's Statement of the Case"); analogously, answers, replies, counterclaims, and responses to counterclaims all constitute pleadings. *See Odyssey Re (London)*, slip op., at 15 (citing FED. R. CIV. P. 7(a) and 735 ILCS 5/2-602, 2-603). Nor is it relevant that Sphere Drake did not argue that Stirling Cooke lacked authority to bind All American in its opening statement (Def. Reply, at 5)[8]; Sphere Drake was certainly entitled to raise that defense once All American opened the door to it. All American may regret its strategic decision to disavow Stirling Cooke's agency relationship, but that is not a basis for vacating the arbitral award.

All American argues that the panel was required to accept its interpretation of the two sentences – which All American insists was "entirely reasonable under the circumstances" (Def. Reply, at 7) – because on a motion to dismiss, all reasonable inferences must be drawn in favor of the nonmoving party. (*Id.*) *See Flannery v. Recording Industry Ass'n of America*, 354 F.3d 632, 640 (7th Cir. 2004) (quoting *Martinez v. Hooper*, 148 F.3d 856, 858 (7th Cir. 1998)) (in deciding a motion to dismiss, court asks "whether there is any possible interpretation of the complaint under

---

[8]    The Reply Memorandum of Law in Further Support of All American Life Insurance Company's Renewed Motion to Vacate is cited as "Def. Reply, at __."

which it can state a claim"). Even assuming this is the proper standard for reviewing a position statement submitted in an arbitration, the fact that reasonable inferences must be drawn in favor of the nonmoving party does not prevent dismissal where "inferences[,] while theoretically plausible are inconsistent with the pleadings." *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000).

In its position statement, All American affirmatively disavowed an agency relationship with Stirling Cooke and continued to do so throughout the arbitration proceedings. At the same time, All American insisted that its disavowal did not mean what Sphere Drake said it meant and was not intended to imply that Stirling Cooke lacked authority to bind All American. Even if the panel erred in rejecting All American's proffered interpretation, there is no evidence that the panel did not afford that interpretation the proper deference before doing so. *See Lee v. City of Chicago*, No. 01 C 6751, 2003 WL 22071475, at *2 (N.D. Ill. Sept. 4, 2003) (quoting *Coates v. Illinois State Bd. of Educ.*, 559 F.2d 445, 447 (7th Cir. 1977)) ("the court need not 'strain to find inferences favorable to the plaintiff' that are not evident from the face of the complaint").

Significantly, All American admittedly had an opportunity to present its theories to the panel both in its response to the motion for judgment on the pleadings and at oral argument. *Compare Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 21 (2d Cir. 1997) (arbitration panel's refusal to hear testimony from the only witness who could rebut and/or support certain claims amounted to "fundamental unfairness and misconduct sufficient to vacate the award"); *Hoteles Condado Beach, La Concha and Convention Ctr. v. Union de Tronquistas Local 901*, 763 F.2d 34, 40 (1st Cir. 1985) (vacating arbitration award where arbitrator refused to give any weight to the only testimony available to refute or substantiate one party's claims). The fact that the panel did not see a need to hold a full hearing to resolve the issue does not render its decision unenforceable. *See Sheldon v. Vermonty*, 269 F.3d 1202, 1207 (10th Cir. 2001) ("if a party's claims are facially deficient and the party therefore has no relevant or material evidence to present at an evidentiary hearing, the

arbitration panel has full authority to dismiss the claims without permitting discovery or holding an evidentiary hearing").

More problematic is the fact that All American did not have an opportunity to withdraw or amend the admission. "As a general matter, a party should be granted an opportunity to amend his claims prior to a dismissal with prejudice." *Sheldon*, 269 F.3d at 1207 n.5. Exceptions to this general principle include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *King v. Cooke*, 26 F.3d 720, 723 (7th Cir. 1994) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). *See also Cadelli v. United Transp. Union*, 132 F.3d 38 (Table), 1997 WL 785180 (9th Cir. 1997) (quoting *American Title Ins. Co.*, 861 F.2d at 226) ("[f]actual assertions in pleadings and pretrial orders, *unless amended*, are considered judicial admissions conclusively binding on the party who made them") (emphasis added).

Here, Sphere Drake does not argue that it would have been prejudiced by an amendment, or that All American acted in bad faith in making the statement. It argues, instead, that All American should not be allowed to admit something one minute and take it back the next after discovering that the admission produces an unsatisfactory result. (Pl. Response, at 15-16) (citing *Homel v. Sun Ins. Office, Ltd.*, No. Civ A. 92-0442, 1993 WL 56028, at *4 (E.D. Pa. Feb. 27, 1993)) ("to permit a party in its pleadings to get away with being a prevaricating chameleon would visit an injustice on the other party, and make such a mockery of the sanctity of judicial pleadings"). All American contends that it is not changing its allegations but clarifying them in response to Sphere Drake's "newly asserted arguments." (Def. Reply, at 9.)

Though the court does not believe that All American is trying to "mock[] . . . the sanctity of judicial pleadings," there nonetheless does not appear to be a basis for All American's claim that it was denied a fair hearing because it did not have an opportunity to amend its position statement.

12

First, All American never asked to amend its position statement. As a result, All American is left to argue that when it "clarified its intent during the briefing and oral argument on the motion to dismiss, the panel was required to accept this clarification as an amendment to the [position] Statement." (Def. Reply, at 8.) A party, however, "cannot amend his complaint via a response to a motion to dismiss." *Gale v. Hyde Park Bank*, No. 02 C 3663, 2004 WL 170321, at *3 (N.D. Ill. Jan. 20, 2004) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)). *See also E.E.O.C. v. Admiral Maintenance Serv., L.P.*, 174 F.R.D. 643, 646 n.1 (N.D. Ill. 1997) (noting that "[m]otions, which are not pleadings, are discussed in [FED. R. CIV. P.] 7(b)"). *But see Porm v. Peters*, 996 F.2d 1219 (Table), 1993 WL 134054 (7th Cir. 1993) (noting that two other circuits "have held that a plaintiff can make a valid *request* for leave to amend the complaint in a response to a motion to dismiss") (emphasis added).

More importantly, All American did not actually seek to withdraw or amend its statement; the company has at all times stood by its assertion that Stirling Cooke did not have any agency relationship with All American or WEB. All American confirmed that position most recently in its reply memorandum in support of this motion:

> All American's assertion that Stirling Cooke had no agency relationship with WEB or All American was not a mistake, it was in hindsight 'inadvertently' ambiguous to the extent that it gave Sphere Drake the opportunity to misconstrue the statement as admitting that Stirling Cooke never received specific instruction from WEB to accept EIU's quote – an interpretation never contemplated or intended by All American.

(Def. Reply, at 8.) Again, All American did not ask for leave to amend its position statement; rather, All American merely asked the arbitrators to accept All American's interpretation of the disputed statements.

This distinguishes *King v. Cooke*, cited by All American, in which the defendants filed an answer admitting that they were deliberately indifferent to the plaintiff's medical condition and that the indifference constituted cruel and unusual punishment under the Eighth Amendment; and

admitting the factual basis for the plaintiff's state law claims. 26 F.3d at 722. When the defendants filed a motion for summary judgment, the plaintiff responded with a motion for judgment on the pleadings based on the admissions in the answer. The defendants, realizing that they had mistakenly admitted the plaintiff's allegations, moved for leave to amend the answer. *Id.* at 722. The district court granted the defendants' motion and the Seventh Circuit affirmed, finding that the admissions were inadvertent and that the amendment was not prejudicial to the plaintiff. *Id.* at 723-24. Here, conversely, All American denies that it made a mistake and does not seek to change the statements giving rise to the admission. (Def. Reply, at 8.)

Even if the arbitrators had allowed a formal amendment, moreover, the court is uncertain the result would have been any different. All American finds it significant that Stirling Cooke was an intermediary capable of entering contracts, even if not an agent. However, "[t]he law generally views the intermediary who negotiates the insurance contract as the agent either of the insured or the insurer, not as a party pursuing its own objectives." *Feinstein v. Nettleship Co. of Los Angeles*, 714 F.2d 928, 932 (9th Cir. 1983). "Whether an insurance intermediary is an agent of the insured or an agent of the insurer is generally a question of fact." *American Ins. Corp. v. Sederes*, 807 F.2d 1402, 1405 (7th Cir. 1986). Here, All American does not claim that Stirling Cooke was Sphere Drake's agent and, as noted, affirmatively denies that Stirling Cooke was its own agent. On these facts, the court cannot say that All American was denied a fair hearing merely because the panel did not deem All American's responsive memorandum an amendment to its position statement, or accept All American's interpretation of the disputed statements.

## C. The Effect of the Admission

Anticipating this result, All American argues that it was denied a fair hearing because the admission regarding Stirling Cooke's lack of agency authority is not decisive on the issue whether the parties entered into binding contracts. All American claims that it should have been allowed

to present evidence that Sphere Drake ratified the contract and/or is estopped from denying the existence of the contract because it accepted premium payments, approved bordereaux reports,[9] paid disbursements on claims, and waited more than a year to rescind the contracts and attempt to return the premium payments. (Def. Mem., at 19-20; Def. Reply, at 10.)

When an agent acts without authority in entering into a contract on behalf of a principal, the principal may nonetheless ratify the contract by retaining the benefit of the transaction or taking a position that is inconsistent with nonaffirmance upon learning of the unauthorized transaction. *Sphere Drake Ins. Ltd. v. All American Life Ins. Co.*, __ F. Supp. 2d __, 2003 WL 22232840, at *11 (N.D. Ill. Sept. 22, 2003) (Hart, J.) *See also Stathis v. Geldermann, Inc.*, 295 Ill. App. 3d 844, 858, 692 N.E.2d 798, 808 (1st Dist. 1998); *American Ins. Co. v. Meyer Steel Drum, Inc.*, No. 88 C 0005, 1990 WL 92882, at *4 (N.D. Ill. June 27, 1990)) ("[a]n acceptance of benefits under a contract is conduct sufficient to constitute a ratification binding on the party accepting the benefits as if it had signed the contract"). "For ratification to occur, the principal must, with full knowledge of the act, manifest an intent to abide and be bound by the transaction." *Stathis*, 295 Ill. App. 3d at 858, 692 N.E.2d at 808 (citing *Peskin v. Deutsch*, 134 Ill. App. 3d 48, 55, 479 N.E.2d 1034, 1039 (1st Dist. 1985)).

In this case, Stirling Cooke was not acting on behalf of Sphere Drake; it was purporting to act on behalf of All American, and All American denied that Stirling Cooke had authority to do so. In other words, Sphere Drake was not the "principal" capable of ratifying the acts of Stirling Cooke. (Pl. Response, at 17-18.) To the extent ratification is "part of the law of agency," *Abraham v. North Ave. Auto, Inc.*, No. 00 C 1764, 2001 WL 1002067, at *4 (N.D. Ill. Aug. 24, 2001), All American

---

[9] A "bordereau" is "[a] description of reinsured risks; esp., a periodic report provided by a cedent to a treaty reinsurer, consisting of basic information affecting the reinsurance treaty, such as the underlying insureds, the types of risks covered, policies, and dates of loss." *Sphere Drake Ins. Ltd. v. All American Life Ins. Co.*, __ F. Supp. 2d __, 2003 WL 22232840, at *10 n.16 (N.D. Ill. Sept. 22, 2003) (Hart, J.) (quoting *Black's Law Dictionary* 178 (7th ed. 1999)).

could not properly argue that Sphere Drake ratified Stirling Cooke's acts and, thus, was not denied a fair hearing on that basis.

All American does not deny this. Instead, All American argues that its theory is not based on such agency principles but, rather, on the "well-established tenet that a party to a contract may be held to ratify the existence of the contract and/or be estopped from denying the contract's validity by partial performance." (Def. Reply, at 10-11.) "A party that accepts the benefits of an agreement is estopped from denying the existence of that agreement." *Wasserman v. Autohaus on Edens, Inc.*, 202 Ill. App. 3d 229, 238-39, 559 N.E.2d 911, 918 (1st Dist. 1990). Even assuming All American has a viable argument under these part performance and estoppel theories, All American did not argue them to the arbitration panel, limiting itself solely to the issue of ratification. (Ex. K to Amer Aff., at 10-11.) Nor did All American raise either issue in its position statement. "The failure to pose an available argument to the arbitrator waives that argument in collateral proceedings to enforce or vacate the arbitration award." *Ganton Technologies*, __ F.3d __, 2004 WL 253562. *See also Hallmark & Johnson Properties, Ltd. v. Taylor*, 201 Ill. App. 3d 512, 519, 559 N.E.2d 141, 146 (1st Dist. 1990) ("where the theory of equitable estoppel is not pleaded, it is waived"); *Skywalker Communications of Indiana, Inc. v. Skywalker Communications, Inc.*, 333 F.3d 829, 831 (7th Cir. 2003) (part performance defense waived where it was not raised before the district court). Thus, the court cannot say that All American was denied a fundamentally fair hearing with respect to the issues that were before the arbitration panel.

## II.    Scope of Authority

Under 9 U.S.C. § 10(a)(4), an arbitration award may be vacated if "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." The scope of arbitration is determined by the arbitration agreement and the issues submitted by the parties. *Lefkovitz v. Wagner*, 291 F. Supp. 2d 764, 771

(N.D. III. 2003) (citing *American Postal Workers Union, AFL-CIO, Milwaukee Local v. Runyon*, 185 F.3d 832, 835 (7th Cir. 1999)). All American argues that the panel improperly decided a legal issue reserved for the courts and a factual issue that was never presented to the panel.

## A.    Legal Issue

All American claims that "whether or not Stirling Cooke was legally competent to effectuate the reinsurance transaction as an 'intermediary' acting at the specific direction of All American is an inquiry that goes to contract formation." (Def. Mem., at 20.) Questions of contract formation, All American argues, are to be decided by courts, not arbitrators. (*Id.* at 21.) In support of this argument, All American cites the Seventh Circuit's decision in this case, which notes that "[m]any appellate courts have held that the judiciary rather than an arbitrator decides whether a contract came into being." *Sphere Drake Ins.*, 256 F.3d at 591. Where a dispute is about an agent's authority to bind a principal to the contract, the court said, the issue is not arbitrable unless the parties separately agreed to "arbitrate disputes about whether they have agreed to the contract's substantive promises." *Id.* All American claims that it never agreed to arbitrate the issue of Stirling Cooke's legal competence to bind the six reinsurance contracts because (1) the issue was never raised until Sphere Drake sought judgment on the pleadings, and (2) once it was raised, All American "strenuously objected to the panel entertaining Sphere Drake's motion." (Def. Reply, at 13-14.)

Sphere Drake responds that the parties did in fact agree to submit the issue of contract formation to the arbitration panel. From the outset, Sphere Drake contended that "the reinsurance contracts were void *ab initio,* because Sphere Drake's agent and Stirling Cooke had fraudulently conspired." (Pl. Response, at 19-20.) In responding to Sphere Drake's position statement, All American never suggested that the issue of contract formation was outside the panel's jurisdiction, or that the case was not subject to arbitration. (*Id.* at 20.) In Sphere Drake's view, that fact

distinguishes the cases cited by All American, in which one party resisted arbitration entirely. *See, e.g., Sphere Drake Ins.*, 256 F.3d at 589 (Sphere Drake expressly argued that it should not be required to arbitrate the agency issue); *Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 30 (2d Cir. 2001) ("[i]f the making of the agreement to arbitrate is placed in issue . . . the court must set the issue for trial"); *N & D Fashions, Inc. v. DHJ Indus., Inc.*, 548 F.2d 722, 729 (8th Cir. 1976) (whether purchasing agent had authority to enter into a binding arbitration agreement on behalf of buyer was a question for the courts "because it goes expressly to the making of the agreement to arbitrate").

All American knew that Sphere Drake challenged the validity and existence of the six reinsurance contracts and agreed to submit the parties' disputes regarding those contracts to arbitration. Prior to receiving All American's position statement, Sphere Drake may not have expressly challenged the contracts on the basis of Stirling Cooke's authority, or lack thereof, to bind All American, but that is certainly encompassed within the broader issue of whether the contracts were generally valid. To be sure, All American objected to the merits of Sphere Drake's motion and to the panel entertaining the motion before a hearing on the evidence, but that is not the same as objecting to the panel's authority to consider the argument at all. *Compare AGCO Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000) ("[i]f a party willingly and without reservation allows an issue to be submitted to arbitration, he cannot await the outcome and then later argue that the arbitrator lacked authority to decide the matter"). Thus, All American has not established that the panel exceeded its authority in deciding whether the parties entered into binding contracts.

### B. Factual Issue

For similar reasons, All American's objection that the panel exceeded its authority in deciding whether Stirling Cooke had authority to bind All American is also unavailing. All American correctly notes that Sphere Drake initially argued only that Stirling Cooke was aware that EIU did

not have authority to bind Sphere Drake. (Def. Mem., at 22-23.) As a result, All American contends, the issue of Stirling Cooke's authority to bind All American was not "in dispute" and could not be decided by the arbitration panel. (*Id.* at 23) (citing *AGCO*, 216 F.3d at 593-94 (arbitrators exceeded their authority where there was strong evidence that one party "never intended to have the arbitration clause cover the present controversy"); *Eljer Mfg.*, 14 F.3d at 1257 (arbitrator exceeded his powers where arbitration clause did not authorize him to arbitrate disputes between Eljer and a third party that was not a signatory to the arbitration agreement); *Roadway Package Sys., Inc. v. Kayser*, 257 F.3d 287, 301 (3d Cir. 2001) (arbitrator exceeded authority by deciding whether employer's discharge system lacked due process, not whether employee's discharge was contrary to the collective bargaining agreement as was his charge)). The court disagrees.

Sphere Drake at all times claimed that Stirling Cooke engaged in misconduct in securing the six reinsurance contracts. In response to statements made for the first time in All American's position statement, Sphere Drake additionally challenged Stirling Cooke's authority to bind All American. Under either theory, the underlying issue was whether the six contracts were valid, an issue which the parties clearly agreed to submit to the arbitration panel. None of the cases cited by All American establishes that a party cannot expand its theory of recovery under a particular issue, or that an issue is not "in dispute" if it was raised in response to an opposing party's statement of the case. As noted, All American never challenged the panel's authority to decide the issue of contract validity; the company only challenged the merits of Sphere Drake's arguments and the panel's decision to address those arguments without first conducting a full hearing. Thus, there is insufficient evidence to support All American's claim that the panel exceeded its authority by deciding whether Stirling Cooke had authority to bind All American and create valid contracts.

### III.    Manifest Disregard of the Law

In its final challenge to the arbitration award, All American argues that the panel exhibited a manifest disregard of the law. "When arbitrators demonstrate a manifest disregard for the applicable law, courts will not enforce the award." *National Wrecking Co. v. International Bhd. of Teamsters, Local 731*, 990 F.2d 957, 961 (7th Cir. 1993). *See also Health Servs. Mgt. Corp. v. Hughes*, 975 F.2d 1253 (7th Cir. 1992) (to vacate an arbitration award "it must be demonstrated that the majority of arbitrators deliberately disregarded what they knew to be the law in order to reach the result they did"). The "manifest disregard" principle arises in two situations: (1) an arbitral order requires the parties to violate the law; and (2) an arbitral order "does not adhere to the legal principles specified by contract, and hence [is] unenforceable under § 10(a)(4)." *George Watts & Sons, Inc. v. Tiffany and Co.*, 248 F.3d 577, 581 (7th Cir. 2001) (Easterbrook, J.) *See also Butler Mfg. Co. v. United Steelworkers of America, AFL-CIO-CLC*, 336 F.3d 629, 636 (7th Cir. 2003) ("an arbitral decision is in manifest disregard of the law only when the arbitrator's award actually orders the parties to violate the law").

All American claims that the panel "deliberately disregarded what the arbitrator knew to be the law in order to reach a particular result." (Def. Reply, at 11) (quoting *National Wrecking*, 990 F.2d at 961). Specifically, the panel allegedly ignored that under Illinois law, (1) a contract can be formed through an intermediary who is not a general agent, and (2) "even where the requisite elements of contract formation are not present, a binding contract may nevertheless exist based on partial performance under theories of estoppel and/or ratification." (Def. Mem., at 26, 27.) Even assuming this is true, however, as Sphere Drake points out, manifest disregard of the law requires a showing that the decision requires the parties to violate the law, or it exceeds the arbitrators' authority under § 10(a)(4). This court has already determined that the panel did not exceed its

authority in issuing its decision, and All American does not suggest that the decision requires either party to violate the law. *George Watts & Sons*, 248 F.3d at 581.

All American urges that *George Watts & Sons* does not set forth the exclusive test, nor overrule the pronouncements set forth in *National Wrecking* and *Health Servs. Mgt.* regarding the manifest disregard of law doctrine. Those cases, All American says, require a court to vacate an arbitration award if the arbitrator disregarded Illinois substantive law. (Def. Reply, at 12.) The *George Watts & Sons* court, however, rejected that argument. The court noted that the law on the issue had been unsettled, but reconciled earlier cases such as the ones cited by All American as follows:

> There is, however, a way to understand "manifest disregard of the law" that preserves the established relation between court and arbitrator and resolves the tension in the competing lines of cases. It is this: an arbitrator may not direct the parties to violate the law.

248 F.3d at 580. An error in applying substantive law does not constitute a manifest disregard of that law. *See id.* ("[a]n error of law is not a ground . . . for vacating or modifying an award"); *Mollison-Turner v. Lynch Auto Group*, No. 01 C 6340, 2002 WL 1046704, at *4 (N.D. Ill. May 23, 2002) ("there must be something beyond and different from mere error in law or failure on the part of the arbitrator[ ] to understand or apply the law"). Thus, under *George Watts & Sons*, the panel's award cannot be vacated on grounds of manifest disregard of the law.

## CONCLUSION

For the reasons stated above, All American Life Insurance Company's Renewed Motion to Vacate (Docket No. 84) is denied. Sphere Drake Insurance Company Limited's Motion to Strike

(Docket No. 90-1) is denied as moot.  Sphere Drake's request to confirm the Final Award is granted.

ENTER:

Dated:  March 8, 2004

REBECCA R. PALLMEYER
United States District Judge